Patrick J. Richard (CA 131046)
prichard@nossaman.com
James H. Vorhis (CA 245034)
jvorhis@nossaman.com
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  415.398.3600
Facsimile:   415.398.2438

Kevin Collins (CA 185427)
kcollins@nossaman.com
Nossaman LLP
915 L Street, Suite 1000
Sacramento, CA 95814
Telephone:  916.442.8888
Facsimile:   916.442.0382

Attorneys for Plaintiff
FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR COUNTY BANK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR COUNTY BANK<br><br>        Plaintiff,<br><br>    vs.<br><br>THOMAS T. HAWKER; JOHN J. INCANDELA; DAVE KRAECHAN; EDWIN JAY LEE; EDWARD J. ROCHA; AND DOES 1-50,<br><br>        Defendant. | Case No:  12-cv-00127-LJO-DLB<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:  June 12, 2012<br>Time: 8:30 a.m.<br>Courtroom:  4<br>Judge:  The Hon. Lawrence J. O'Neill |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF PERTINENT ALLEGATIONS ............................................... 3

       A.    The Short Plain Statement .................................................................... 3

       B.    The Specific Ways in Which Defendants' Lending Activities Harmed
             the Bank ................................................................................................ 4

             1.    Defendants Collectively Caused Harm to the Bank .......................... 4

             2.    Defendant Hawker Negligently Encouraged, Approved and
                   Permitted Substandard Loans ...................................................... 5

             3.    Defendant Incandela Abdicated His Responsibilities as the
                   Chief Credit Officer .................................................................. 6

             4.    Defendant Kraechan Negligently Discharged His Duties as
                   Chief Lending Officer ................................................................ 6

             5.    Defendant Lee Failed To Perform His Duties As The Bank's
                   Creditor Administrator On Two Loan Committees ....................... 6

             6.    Defendant Rocha Failed As President And Chief Operating
                   Officer, Serving on the Loan Committees Approving The 12
                   Substandard Loans ...................................................................... 6

III.   LEGAL ARGUMENT ........................................................................................ 7

       A.    Defendants Misstate The Fiduciary Standard Owed By Officers,
             Ignore The Fact That Defendants Violated The Bank's Own Lending
             Policies, And Raise Factual Issues Not Appropriate For Determination
             At The Pleading Stage ........................................................................ 7

             1.    As Officers, Defendants Owed A Fiduciary Duty Of The
                   "Highest Good Faith" To The Bank ........................................... 7

             2.    Defendants "Threshold of Perfection" Argument Typifies Why
                   The Motion Fails ........................................................................ 9

             3.    Defendants Also Breached Their Duty Of Care By Violating
                   The Bank's Internal Loan Policies ............................................. 9

             4.    Defendants Raise Other Meritless Arguments in an Attempt To
                   Shield them From Liability For Their Negligent Conduct ............ 10

       B.    The California BJR Does Not Apply To Officers, And May Not Be
             Used By Defendants As An Affirmative Defense In This Case ............... 11

             1.    California Corporations Code Section 309 Codifies The BJR as
                   an Affirmative Defense That Only Applies To Directors, Not
                   Officers ...................................................................................... 11

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

2.   California Courts Have Confirmed That The BJR Applies Only To Directors ......................................................................... 14

3.   Recent Federal District Court Opinions Have Confirmed The Holding In *Gaillard*. ............................................................... 15

4.   Cases Cited By Defendants Do Not Support Their Argument That The Common Law Permits Officers To Use The BJR As A Defense ............................................................................ 16

5.   The Common Law BJR Defense in California Never Applied to Officers, Thus Section 309 Could Not Have Repealed The Common Law By Implication ............................................... 19

C.   The BJR Is An Affirmative Defense That Raises Questions Of Fact ......... 22

IV.   CONCLUSION ................................................................................................ 25

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Antioch Co. Litig. Trust v. Morgan (In re The Antioch Company)*
    2011 Bankr. LEXIS 1577 (Bankr. S.D. Ohio April 28, 2011)............................. 24

*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ......................................... 2, 3, 24

*Atherton v. FDIC*
    519 U.S. 213 (1997)........................................................... 12, 22

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ......................................................... 2, 3, 24

*FDIC v. Appleton*
    C.D. Cal. Case No. CV 11-00476 JAK ......................................... 1, 16

*FDIC v. Bierman*
    2 F.3d 1424 (7th Cir. 1993) ................................................... 11, 23

*FDIC v. Castetter*
    184 F.3d 1040 (9th Cir. 1999) ..................................................... 12

*FDIC v. McSweeney*
    976 F.2d 532 (9th Cir. 1992) ...................................................... 22

*FDIC v. Mijalis*
    15 F.3d 1314 (5th Cir. 1994) ...................................................... 10

*FDIC v. Oldenburg*
    38 F.3d 1119 (10th Cir. 1995) ..................................................... 10

*FDIC v. Perry*
    C.D. Cal. Case No. CV 11-5561 ODW ...................................... 1, 15, 16

*FDIC v. Saphir*
    2011 WL 3876918 (N.D. Ill. Sep. 1, 2011) ......................................... 11

*FDIC v. Stahl*
    840 F. Supp. 124 (S.D. Fla. 1993)................................................. 23

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

*FSLIC v. Musacchio*
   695 F. Supp. at 1064 ...................................................................................... 23

*FSLIC v. Roy*
   1988 U.S. Dist. LEXIS 6840 (D. Md. 1988) ............................................ 8

*Geltzer v. Altman (In re 1st Rochdale Coop. Group, Ltd.)*
   2008 U.S. Dist. LEXIS 4966 (S.D.N.Y. Jan. 17, 2008) ...................... 24

*Gilbert v. Bagley*
   492 F. Supp. 714 (M.D. N.C. 1980) ........................................................ 23

*Golden West Refining Co. v. SunTrust Bank*
   538 F.3d 1233, 1238 (9th Cir. 2008) ...................................................... 20

*Grant Thornton v. FDIC*
   535 F.Supp.2d 676, 722 (S.D.W.Va. 2007) .......................................... 10

*In re Reading Broadcasting, Inc.*
   390 B.R. 532 (Bankr. E.D. Pa. 2008) ................................................... 23

*O'Campo v. Chico Mall, LP*
   758 F. Supp. 2d 976 (E.D. Cal. 2010) ..................................................... 2

*RTC v. Bernard*
   1995 U.S. Dist. LEXIS 12819 (M.D.N.C. Aug. 8, 1995) .................... 23

*RTC v. Heiserman*
   839 F. Supp. at 1464 (D. Co. 1993)........................................................ 23

*RTC v. Youngblood*
   807 F.Supp. 765 (N.D. Ga. 1992).............................................................. 8

*Shroyer v. New Cingular Wireless Services, Inc.*
   622 F.3d 1035 (9th Cir. 2010) ................................................................... 2

*Sonista, Inc. v. Hsieh*
   2005 U.S. Dist. LEXIS 31397 (N.D. Cal. Nov. 21, 2005)............... 12, 13

*Sprewell v. Golden State Warriors*
   266 F. 3d 979 (9th Cir. 2001) .................................................................... 3

*Talib v. Skyway Commc'ns Holding Corp.*
   2005 U.S. Dist. LEXIS 33589 (M.D. Fla. July 7, 2005) ..................... 23

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

**CALIFORNIA CASES**

*Barnes v. State Farm Mut. Auto Ins. Co.*
  16 Cal.App.4th 365 (1993) ............................................................. 16

*Berg & Berg Enterprises LLC v. Boyle*
  178 Cal.App.4th 1020 (2009) ............................................. 12, 16, 17

*Burt v. The Irvine Company*
  237 Cal.App.2d 828 (1965) ......................................................... 7, 18

*California Assn. of Health Facilities v. Department of Health Services*
  16 Cal.4th 284 (1997) ................................................................... 19

*Catholic Mut. Relief Soc'y v. Superior Court*
  42 Cal.4th 358 (2007) ................................................................... 20

*DaFonte v. Up-Right, Inc.,*
  2 Cal.4th 593 (1992) ..................................................................... 20

*Doe v. City of Los Angeles,*
  42 Cal.4th 531 (2007) ................................................................... 20

*Eldridge v. Tymshare, Inc.*
  186 Cal.App.3d 767 (1986) ........................................................... 22

*Gaillard v. Natomas Co.*
  208 Cal.App.3d 1250 (1989) .................................................. passim

*Hays v. Wood*
  25 Cal.3d 772 (1979) ..................................................................... 21

*Lamden v. La Jolla Shores Clubdominium Homeowners Ass'n*
  21 Cal.4th 249 (1999) ................................................................... 14

*Lee v. Interinsurance Exchange*
  50 Cal.App.4th 694 (1996) ........................................................... 16

*Lehman v. Superior Court*
  145 Cal.App.4th 109 (2006) ......................................................... 18

*Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors*
  263 Cal.App.2d 41 (1968) ............................................................. 20

**FEDERAL STATUTES**

12 U.S.C. § 1821 ................................................................................. 3

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

12 C.F.R. § 1.5 ................................................................................ 7, 8, 9

12 C.F.R. § 365.2 ......................................................................................... 9

FRCP Rule 8 ............................................................................................ 2, 3

FRCP Rule 12(b)(6) ........................................................................ 2, 20, 25

FRCP Rule 56(d) ...................................................................................... 1

Financial Institutions Reform, Recovery and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183 (1989) .......................................... 22

**CALIFORNIA STATUTES**

Cal. Corp. Code, § 204(a)(10) ................................................................ 14

Cal. Corp. Code § 309 ................................................................... passim

**OTHER AUTHORITIES**

6 Witkin Summary of California Law 10th (2011 supp.) .......................... 9

Douglas M. Bria, et al., *Counseling California Corporations* (3d ed. 2010) ................. 15

G. Hugh Friedman, *California Practice Guide: Corporations* (2011) .......................... 14

H. Ballantine & G. Sterling, *California Corporation Laws* (2011) ................................ 15

Harold Marsh, Jr., et al., *Cal. Corporation Law* § 11.03[A] at 11-28 (4th ed., 2011) ... 14

Joseph F. Troy and William D. Goulds, *Advising and Defending Corporate Directors
    and Officers* § 3.16, at 87-88 (2007) ................................................... 17

1    I.    **INTRODUCTION**

2          Defendants ask this Court to dismiss Plaintiff's Complaint against five officers of

3    County Bank for negligence and breach of fiduciary duties in approving large

4    commercial real estate loans primarily based upon California's statutory business

5    judgment rule ("BJR") (Corporations Code Section 309 ("Section 309")).  In doing so,

6    Defendants request this Court to extend the BJR to the officers and employees

7    responsible for the day-to-day operations of County Bank ("County" or the "Bank"),

8    including the Bank's critical and "speculative" real estate lending.  Because all of the

9    Defendants were sued in their capacity as officers and employees of the Bank,

10   California's affirmative defense of the BJR does not provide immunity for the harm

11   caused by their repeated acts of negligence and breaches of fiduciary duty.  In arguing

12   that they are entitled to the protection of the BJR, Defendants ignore the plain language

13   of Section 309, which limits protection to directors only.  Remarkably, Defendants

14   continue to press these arguments in the face of two recent District Court decisions which

15   rejected the same strained interpretation of California law Defendants make in this case.

16   See Request for Judicial Notice ("RJN"), Exhs. A (Order Denying Defendants' Motion to

17   Dismiss in *FDIC v. Perry*, C.D. Cal. Case No. CV 11-5561 ODW (MRWx) [Docket No.

18   34]) and B (Minute Order Denying Motion to Dismiss in *FDIC v. Appleton*, C.D. Cal.

19   Case No. CV 11-00476 JAK (PLAx) [Docket No. 54]).  Like the courts in *Perry* and

20   *Appleton*, this Court should similarly decline Defendants' request to extend California's

21   law in a manner directly contrary to the statutory BJR and dispositive appellate authority.

22         Defendants also raise several other arguments as grounds to dismiss the

23   Complaint which are more in the nature of closing argument, including: 1) Defendants

24   erroneously argue they are being held to a "threshold of perfection"; 2) Defendants urge

25   that their "subjective" intent is exculpatory; and 3) Defendants argue that economists

26   and regulators later acknowledged the unforeseeability of aspects of sub-prime lending

27   and the recession.  As demonstrated below, none of these arguments support a dismissal

28

268889_8.DOC                                   - 1 -                        Case No. 1:12-cv-00127-LJO-DLB

of Plaintiff's Complaint[1].

### APPLICABLE LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure ("FRCP") simply requires a "short and plain statement of a claim"; it does not require detailed allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' **Specific facts are not necessary**; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'")).  A court should not grant a motion under Rule 12(b)(6) of the FRCP unless the complaint does not allege a claim supported by a cognizable legal theory or if the complaint does not allege sufficient facts in support of a cognizable legal theory. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

A complaint need only state a facially plausible claim for relief. *Id.* (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 570).  "'Plausibility,' as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will succeed in proving the allegations." *O'Campo v. Chico Mall, LP,* 758 F. Supp. 2d 976, 980 (E.D. Cal. 2010).  Rather, "it refers to whether the non-conclusory factual allegations, when assumed to be true, 'allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Iqbal*, 556 U.S. at 678).

---

[1]  Plaintiff has contemporaneously filed written objections to Defendants' Request for Judicial Notice, which is incorporated by reference herein.  In the event that the Court takes judicial notice of any the proposed documents, Defendants' motion to dismiss will be converted into a motion for summary judgment and Plaintiff must be given an opportunity to respond and address those documents of which the court takes judicial notice.  Plaintiff has submitted a Rule 56(d) declaration identifying some of the additional evidence that would be appropriate to consider on a summary judgment motion, including principally expert and percipient testimony as to Defendants' numerous departures from the Bank's lending policy, and from standards of prudent lending and safe and sound banking practices.

1  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

2  than a sheer possibility that a defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678

3  (citing *Twombly*, 550 U.S. at 556).  Thus, a claim is "plausible" so long as the factual

4  allegations "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at

5  555.  This should be a low hurdle because, when addressing the motion, the court must

6  accept as true all of the factual allegations set forth in the complaint and draw inferences

7  from the allegations in the light most favorable to plaintiff.  *Sprewell v. Golden State*

8  *Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001) (amended on other grounds, 275 F. 3d

9  1187 (9th Cir. 2001)).

10         Thus, although Plaintiff has described particular loans as examples of Defendants'

11  irresponsible lending activity, Plaintiff is not required to set forth specific facts

12  establishing each way in which each loan breached the standard of care.  As set forth in

13  the following detailed excerpts from Plaintiff's Complaint, however, Plaintiff has set

14  forth more than sufficient facts as to each of the Defendants to satisfy Rule 8(a)(2).

15  **II.    STATEMENT OF PERTINENT ALLEGATIONS**

16         The Complaint alleges all of the following regarding how Defendants breached

17  their duties to the Bank:

18         **A.    The Short Plain Statement**

19         "Each of these Defendants was an officer of the Bank, with both direct and

20  indirect responsibility for the Bank's lending policies and the specific lending decisions

21  described herein.  Each of the Defendants is sued for conduct <u>as an officer of the Bank</u>.

22  Defendants each served on the Bank's Executive Loan Committee ("ELC").  Defendants

23  breached their duties to County in connection with the Bank's commercial and real

24  estate development loans and lending practices.  As a result of Defendants' negligence

25  and breaches of their fiduciary duties, Defendants caused or allowed County to make

26  imprudent real estate loans, typically for the construction and development of

27  residences, for which County Bank suffered losses in excess of $42 million.  Pursuant to

28  its authority under 12 U.S.C. § 1821, FDIC-R seeks to recover these losses and such

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

losses as may be proven at trial from Defendants."  Complaint, ¶ 2, emphasis added.

"Management repeatedly disregarded the Bank's credit policies and approved loans to borrowers who were not credit worthy and/or for projects that provided insufficient collateral and guarantees for repayment.  The Bank's compensation plans for its management and account officers encouraged them to push for growth in loan production volume with little regard for credit quality."  Complaint, ¶ 4.

"The Bank's commercial real estate department continued to follow a strategy of growth at the tail-end of the longest appreciating real estate market in over four decades. The Bank's management pushed to grow loan production despite their awareness that significant market changes required more stringent underwriting, not departures from prudent lending standards.  Indeed, management unwisely continued risky commercial real estate lending in a deteriorating market even after becoming aware of the market decline."  Complaint, ¶ 5.

"As detailed herein, the poor lending practices are exemplified by 12 loans made between December 2005 and June 2008, for which losses exceed $42 million."  Complaint, ¶ 6.

**B.**   **The Specific Ways in Which Defendants' Lending Activities Harmed the Bank**

   **1.**   **Defendants Collectively Caused Harm to the Bank**

"During late 2005 through mid 2008, Defendants caused County to pursue rapid growth through risky Construction and Land Development loans ("CLD" or sometimes "ADC" for Acquisition, Development and Construction loans) and Commercial Real Estate loans ("CRE").  These types of loans are known to be more speculative than other types of loans because, among other reasons, of the lack of a present cash flow source, uncertainties of development and sale, and the need for adequate secondary sources of repayment.  Prudent lending in this segment of banking requires sound underwriting, timely evaluation and response to economic trends impacting the industry, and strict adherence to prudent lending

1    policies and standards."  Complaint, ¶ 8.

2            "Defendants breached their duties to the Bank in several important ways.

3    Defendants' conduct fell below the standard of care because defendants approved and

4    permitted imprudent loans that violated the Bank's own lending policies.  The poor

5    lending practices include substandard evaluation of proposed projects, borrowers,

6    contractors and guarantors.  Loan files lacked sensitivity analyses, failed to include

7    sound cash flow analyses, failed to evaluate "what if" scenarios affecting cash flows,

8    failed to compare actual cash flows against *pro forma* projections, and failed to specify

9    secondary repayment sources.  Loans also were granted to developers without

10   established staying power.  Payment amounts by borrowers for partial releases of

11   mortgaged property for CLD loans were less than 125 percent of the allocated loan

12   amount.  Borrowers failed to contribute required equity."  Complaint, ¶ 25.

13           Plaintiff's Complaint then sets forth additional facts discussing twelve loans that

14   were examples of the causal relationship between poor oversight by Defendants and

15   departures from safe and sound banking practices.  Complaint, ¶¶ 25, 31-40.

16   Defendants' breaches of fiduciary duties caused or allowed the Bank to make these

17   loans.

18           **2.    Defendant Hawker Negligently Encouraged, Approved and**
                     **Permitted Substandard Loans**
19

20           "Defendant Thomas T. Hawker, as the Chief Executive Officer and a member of

21   the Executive Loan Committee failed to adhere to the standard of care by approving

22   high risk loans that did not conform to the Bank's underwriting standards.  He did so to

23   pursue a goal of unreasonable growth at a time when market conditions and warnings

24   from his own Board of Directors and others highlighted the need for prudent lending

25   practices.  The 12 exemplar loans provide specific examples of imprudent lending

26   decisions made upon the approval and knowledge of Hawker that caused over $42

27   million of damages to the Bank."  Complaint, ¶ 26.

28

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

### 3. Defendant Incandela Abdicated His Responsibilities as the Chief Credit Officer

"Defendant John J. Incandela was the Bank's Executive Vice President and Chief Credit Officer from June 2005 until the Bank failed.  He was also a member both the ELC and MLC.  Incandela breached his duty to the Bank by agreeing to implement Hawker's goal of growth over safe and sound banking, and the numerous lending violations reflected in the exemplar loans."  Complaint, ¶ 27.

### 4. Defendant Kraechan Negligently Discharged His Duties as Chief Lending Officer

"Defendant Dave Kraechan, as a Senior Vice President and Chief Lending Officer from January 2001 until the Bank failed, and as a member of the ELC, owed a duty to the Bank to ensure that the Bank's lending policies were followed and to take reasonably prudent steps to ensure that the Bank did not make imprudent loans as part of a plan to unreasonably grow this small community bank.  Defendant Kraechan breached these duties with respect to the approval of most of the exemplar loans." Complaint, ¶ 28.

### 5. Defendant Lee Failed To Perform His Duties As The Bank's Creditor Administrator On Two Loan Committees

"Defendant [Edwin] Jay Lee, as a Bank Credit Administrator from April 1998 until the Bank failed and as a member of both the ELC and MLC, owed duties to the Bank to act in a non-negligent manner regarding the Bank's lending policies and the applicable standard of care for prudent loans.  He breached these duties by, among other things, approving all but two of the subject loans, and failing to observe key requirements of the Bank's lending policies and standard of care, including the requirements for a reasonable financial analysis of the prospective borrower and project."  Complaint, ¶ 29.

### 6. Defendant Rocha Failed As President And Chief Operating Officer, Serving on the Loan Committees Approving The 12 Substandard Loans

"Defendant Edward J. Rocha as Chief Operating Officer and President from 2005

1  until the Bank failed, and as member of the ELC, MLC and DLC, owed a duty of

2  highest care to the Bank to take all reasonable steps necessary to ensure the Bank's

3  adherence to safe and sound banking practices.  Rocha breeched these duties, and

4  abdicated these responsibilities, both in the loan approval process for the exemplar

5  loans, and failing to reasonably take steps to assure himself that the Bank's key lending

6  and underwriting functions were adequately staffed with competent, well-trained

7  personnel."  Complaint, ¶ 30.

8  **III.   LEGAL ARGUMENT**

9       **A.   Defendants Misstate The Fiduciary Standard Owed By Officers,
             Ignore The Fact That Defendants Violated The Bank's Own**

10           **Lending Policies, And Raise Factual Issues Not Appropriate For
             Determination At The Pleading Stage**

11

12            **1.   As Officers, Defendants Owed A Fiduciary Duty Of The
                    "Highest Good Faith" To The Bank**

13          In their motion to dismiss ("MTD"), Defendants deny that they owed the Bank the

14  duty of highest good faith.  MTD, 7:19-8:2.

15          Defendants are wrong.  As officers, Defendants owed a duty of the highest good

16  faith to the Bank.  See *Burt v. The Irvine Company*, 237 Cal.App.2d 828, 850 (1965)

17  ("Directors owe a duty of highest good faith to the corporation and its stockholders….the

18  same duty of good faith in dealings, with or on behalf of the corporation, is demanded on

19  officers of the corporation").  Defendants do not dispute that they were fiduciaries.  See

20  CACI No. 4100.

21          Defendants' suggestion that they were simply another business, not to be judged as

22  bankers, also finds no support in the law.  MTD, 7:19-8:2.  On the contrary, depository

23  banks carry, by statute and common sense, the stricter standard of risk reflected in "safe

24  and sound banking practices."  See, e.g., 12 C.F.R. § 1.5.

25                   Banking is a business which directly affects the public welfare,
                     and the law places a heavy duty upon the officers and directors

26                   of banking institutions to manage their affairs properly.  If

27                   officers and directors have negligently recommended and
                     approved a significant number of loans in their institution's

28

portfolio ..., they have breached this duty.

*RTC v. Youngblood*, 807 F.Supp. 765, 773 (N.D. Ga. 1992) (citing *FSLIC v. Roy*, 1988 U.S. Dist. LEXIS 6840 (D. Md. 1988); additional citations omitted).

These standards required Defendants to comport with, at the very minimum, safe and sound lending practices. Plaintiff properly alleged the correct standard of care that Defendants owed the Bank as officers:

> Defendants, as officers of the Bank, owed to the Bank under California law the duty to manage the Bank in a safe and sound manner, especially with respect to the review and correction of the Bank's actual lending practices and approval of proposed development loans reflected in the Bank's portfolio of [Construction and Land Development] and [Acquisition, Development and Construction] loans. Defendants assumed the duties of officers to act in a reasonably prudent and non-negligent manner, consistent with the standard of care for reasonable bank officers of a depository institution. Defendants were managing a depository bank, not operating a hedge fund. Defendants were also fiduciaries of the Bank, and owed to the Bank the highest duty of good faith to put the Bank's welfare and the Bank's interest ahead of their own pecuniary interest as existing or potential shareholders of the Bank's holding company. Complaint, ¶ 24.

Safe and sound banking practices require an institution to "consider, as appropriate, the interest rate, credit, liquidity, price, foreign exchange, transaction, compliance, strategic, and reputation risks presented by a proposed activity, and the particular activities undertaken by the bank must be appropriate for that bank." 12 C.F.R. § 1.5(a). Further, "[i]n conducting these activities, the bank shall determine that there is adequate evidence that an obligor possesses resources sufficient to provide for all required payments on its obligations ... ." 12 C.F.R. § 1.5(b).

Whether Defendants complied with safe and sound banking practices or prudent lending standards will be the subject of expert testimony. In this case, consistent with the Complaint, expert testimony will establish that bank lending requires safe and sound

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1   practices because banks have a fundamentally different risk tolerance than hedge funds or

2   speculative businesses.  Regardless, any consideration of whether Defendants' conduct

3   complied with safe and sound banking practices is premature.

### 2.   Defendants "Threshold of Perfection" Argument Typifies Why The Motion Fails

6   Defendants, ignoring the actual factual allegations of the Complaint, argue that

7   Plaintiff seeks to hold Defendants to a "threshold of perfection."  MTD, 8:10.  Contrary

8   to Defendants' contentions, however, standards actually exist – and existed for many

9   years before the careless loans in this case – setting forth when a loan should or should

10  not be made.  Those standards begin with the Bank's own policies, themselves required

11  by banking regulations.  See, e.g., 12 C.F.R. § 365.2, Complaint, ¶ 25.  Defendants'

12  notion of a "threshold of perfection" therefore stands purely as a fictional creation, far

13  removed from Plaintiff's claims and the actual standard of care.

14  Defendants, seeking to justify gross departures from prudent lending standards,

15  also suggest to this Court that their negligence will escape review so long as they

16  "subjectively believed" they were acting in the best interests of the shareholders.  MTD,

17  9:2-5.  The standard of care, however, will be judged against an objective standard, not

18  Defendants' "subjective" view that they are being held to a "threshold of perfection" or

19  that "business" requires sloppy underwriting.  See, e.g., CACI No. 600, 4101; 6 Witkin

20  Summary of California Law 10th (2011 supp.) Torts, § 995.

### 3.   Defendants Also Breached Their Duty Of Care By Violating The Bank's Internal Loan Policies

23  Defendants also ignore Plaintiff's allegations that Defendants violated the Bank's

24  own lending standards.  As one example of an internal policy that Defendants are alleged

25  to have breached in the Complaint, "[i]t is the general policy of the Bank to balance

26  lending activities into commercial, consumer and real estate lending areas.

27  Diversification within the loan portfolio mitigates risks associated with credit

28  concentrations."  RJN, Exh. D, (County Bank loan policy, Section 104.15.03).  The

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

Complaint alleges that Defendants' conduct caused the Bank to violate that internal policy by allowing or causing excessive concentration of ADC and CRE loans. See Complaint, ¶¶ 9-10, 12-13. The Complaint also alleges that the Bank failed to properly account for the financial stability and staying power of the borrowers. Complaint, ¶ 25 ("Loan files lacked sensitivity analyses, failed to include sound cash flow analyses, failed to evaluate 'what if' scenarios affecting cash flows, failed to compare actual cash flows against *pro forma* projections, and failed to specify secondary repayment sources. Loans also were granted to developers without established staying power. Payment amounts by borrowers for partial releases of mortgaged property for CLD loans were less than 125 percent of the allocated loan amount. Borrowers failed to contribute required equity.").

Defendants have no response to these claims. Instead, they argue that in business "exceptions are often necessary." MTD, p. 8, fn. 12. Far from exculpatory, this admission plainly reflects the same cavalier approach that led Defendants to depart from sound lending practices to make the improvident extensions of credit. Whatever "exceptions" Defendants relied upon were not just unnecessary, they led to significant losses to a bank that had been in business for over 30 years and a staple of the Merced community.

### 4. Defendants Raise Other Meritless Arguments in an Attempt To Shield them From Liability For Their Negligent Conduct

Defendants argue both that the Bank's status as a regulated entity and the economic crisis shield them from liability. MTD, 1:17-22; 4:1-4. These arguments fail for two reasons. First, that the Bank was a regulated entity does not lower the standard of care of reasonable bankers – the decision-making and actions of regulators is immaterial to evaluating the Defendants' potential liability. *See, e.g., Grant Thornton v. FDIC*, 535 F.Supp.2d 676, 722 (S.D.W.Va. 2007); *FDIC v. Oldenburg*, 38 F.3d 1119, 1120-21 (10th Cir. 1994); *FDIC v. Mijalis*, 15 F.3d 1314, 1323-24 (5th Cir. 1994). Second, these are indisputably factual arguments, inappropriate for consideration at this early stage.

Defendants' acts or omissions need not be the sole cause of the Bank's losses, instead they "need only be a substantial factor in producing the injury if the injury was reasonably foreseeable at the time of the wrongful act." *FDIC v. Bierman*, 2 F.3d 1424, 1434 (7th Cir. 1993). Thus, Defendants' argument regarding the economy ignores the fact that Defendants' conduct need only be a proximate cause of the harm. *FDIC v. Saphir*, 2011 WL 3876918 at *8 (N.D. Ill. Sep. 1, 2011). Plaintiff has more than adequately alleged that Defendants were a proximate cause of over $42 million in losses to the Bank.

Defendants' motion is rife with hyperbole. For example, on pages 2-3 of the motion Defendants list everything Plaintiff's Complaint apparently fails to state: that they were responsible for the Bank's failure, that they acted in bad faith, that they were disloyal to the Bank, and that they committed a fraud on the Bank. Plaintiff did not need to allege any of these things to maintain the claims it has filed.

Lastly, Defendants argue that their status as stock holders "aligned their interests with all common shareholders" and thus established their prudence. MTD, 4:5-10 An equally logical reaction is that Defendants would take imprudent actions, such as growing the Bank, in an effort to make their stock more valuable.[2]

**B.    The California BJR Does Not Apply To Officers, And May Not Be Used By Defendants As An Affirmative Defense In This Case**

**1.    California Corporations Code Section 309 Codifies The BJR as an Affirmative Defense That Only Applies To Directors, Not Officers**

In their motion to dismiss, Defendants argue that California's BJR "insulates

---

[2]    Indeed, while legally irrelevant to the MTD, the greed of insiders with large equity positions, seeking to turn a trading profit, has been cited as a leading failure of banks – bankers are required by law and by the standard of care to pursue only safe and sound banking practices. See RJN, Exh. E, Alan Greenspan Congressional testimony ("[t]hose of us who have looked to the self-interest of lending institutions to protect shareholder equity, myself included, are in a state of shocked disbelief. The whole intellectual edifice, however, collapsed in the summer of last year. I made a mistake in presuming that the self-interest of organizations, specifically banks, is such that they were best capable of protecting shareholders' equity and the firms.")

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

decisions by corporate fiduciaries from second guessing by the courts, whether they are directors or officers, and protects them from liability."[3]  MTD, 10:4-5, citing *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal.App.4th 1020 (2009).  Defendants are wrong and their reliance on *Berg & Berg* is misplaced.

When the California Legislature enacted the BJR in 1975, it codified California's common law of the business judgment rule.  *Gaillard v. Natomas Co*., 208 Cal. App.3d 1250, 1264 (1989); *FDIC v. Castetter*, 184 F.3d 1040, 1044 (9th Cir. 1999); *Sonista, Inc. v. Hsieh*, 2005 U.S. Dist. LEXIS 31397 at *4 (N.D. Cal. Nov. 21, 2005).  The Legislature considered extending the defense to officers, but declined to do so.  The defense is limited to outside directors.  *Gaillard*, 208 Cal.App.3d at 1264-1265.  Section 309 provides in relevant part:

> (a)  A <u>director</u> shall perform the duties of a <u>director</u>, including duties as a member of any committee <u>of the board</u> upon which the <u>director</u> may serve, in good faith, in a manner such <u>director</u> believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an <u>ordinarily prudent person</u> in a like position would use under similar circumstances.
> [(b)  (permitting reliance on specified information)]
> (c)  A person who performs the duties of a <u>director</u> in accordance with subdivision (a) and (b) shall have no liability based upon any alleged failure to discharge the person's obligations as a <u>director</u>.  In addition, the liability of a director for monetary damages may be eliminated or limited in a corporation's articles to the extent provided in paragraph (10) of subdivision (a) of Section 204.  Emphasis added.

On its face, the statutory BJR applies only to corporate directors, not officers.  The Court of Appeal in *Gaillard*, confirmed this:  "[a]s stated by Marsh in his discussion

_____

[3]    State law governs claims made by the FDIC against officers.  *Atherton v. FDIC*, 519 U.S. 213, 215-16 (1997); *FDIC v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999).  For a federally-insured institution such as County, the applicable state law is that of the state in which the institution "has its main office or maintains its principal place of business."  *Atherton*, 519 U.S. at 224.  County's main office was in Merced, California.  While Defendants appear to concede that California law applies, they also point to numerous out-of-state cases at odds with California law, and which are clearly not applicable to this case.

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

of Section 309:  '[Section 309, subdivision (a)] does not relate to officers of the corporation, but only to directors . . . .  [A]n officer-director might be liable for particular conduct because of his capacity of an officer, whereas the other directors would not.'"  208 Cal. App. 3d at 1265.  While Defendants claim this citation to Marsh is from an old version of that corporations law treatise, they altogether ignore that the relevant passages from the current version of that same treatise overwhelmingly support the non-application of the BJR to officers:

> **[t]his subdivision does not relate to officers of the corporation, but only to directors.**  Of course, an officer does have a duty of care in connection with his position in the corporation, which is probably greater than that of a director.  This was one of the reasons why it was thought inappropriate to attempt to treat the two in the same section.  It was also believed that it was unnecessary to attempt to codify the duties of officers, since these would vary considerably depending on the position which the officer held with the corporation, although the duties of directors would not seem to vary solely in their capacity as directors.  Of course, an officer-director might be liable for particular conduct because of his capacity as an officer, whereas the other directors would not.

Harold Marsh, Jr., et al., *Cal. Corporation Law* § 11.03[A], at 11-28 (4th ed., 2011) ("Marsh") (emphasis added); *see also Sonista, Inc.*, 2005 U.S. Dist. LEXIS 31397, at *6 fn. 1.

Defendants' argument is plainly contrary to the actual language of the Corporations Code.  Nothing in Section 309 suggests that it applies to conduct of a corporate officer acting in that role, even when the officer is also a director.  In fact, the Legislative Committee Comments to Section 309 provide just the opposite:

> **"The standard of care [of the business judgment rule] does not include officers… ."**

In addition, Section 204(a)(10) of the Corporations Code, which is expressly referenced in Section 309, permits corporations, with certain significant limitations, to

1   include within their articles provisions eliminating personal liability for monetary

2   damages of directors for breaches of duties as set forth in Section 309.  This provision,

3   however, does not permit the corporation to limit the liability of a director for his actions

4   as an officer should he also be a corporate officer.   Cal. Corp. Code, § 204(a)(10)(c).

5   "This means 'inside' directors (i.e., directors who are also corporate officer-employees)

6   remain exposed to liability for their conduct *as officers*."  G. Hugh Friedman, *California*

7   *Practice Guide: Corporations* § 6:250.8, at 6-54.5 (2011) (italics in original).  This

8   approach in Section 204(a)(10) undercuts any argument that Section 309 applies to

9   insulate the conduct of director/officers (inside directors) *as* **officers.**  It confirms a

10  legislative intent that one's conduct as a director must be distinguished from one's

11  conduct as an officer – the latter conduct suffering greater exposure to liability.

**2.     California Courts Have Confirmed That The BJR Applies Only To Directors**

12

13          California courts have applied the BJR to shield from scrutiny qualifying

14  decisions made by a corporation's *board of directors*.  See *Lamden v. La Jolla Shores*

15  *Clubdominium Homeowners Ass'n*, 21 Cal.4th 249, 259 (1999), emphasis added.

16  *Gaillard* is the leading California case on the subject.  In *Gaillard*, a group of insider

17  directors (officer-directors) approved a golden parachute plan that could result in an

18  expense to the company of over $10 million despite meeting for only two hours.  The

19  *Gaillard* court made is quite clear that the BJR **does not apply to officers, even those**

20  **who were also directors:**

21

22          The inside directors did not vote on the approval of the golden
        parachutes or consulting agreement.  In securing the payment of
23      these benefits to themselves, they were not '[performing] the
        duties of a director' as specified in Section 309, but were acting
24      as officer employees of the corporation. **The judicial deference**
        **afforded under the business judgment rule therefore should**
25      **not apply.**

26  *Gaillard*, 208 Cal.App.3d at 1265.

27          There is nothing ambiguous in the state appellate court's statement of California

28  law.  *See also* H. Ballantine & G. Sterling, *California Corporation Laws* § 292.06, at

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

14-36 n. 77 (2011) ("when a person who is both a director and an officer is not performing the duties of a director for the challenged action, but is acting as an officer, the judicial deference afforded under the business judgment rule does not apply, as a matter of law, to review of the director's conduct.") (emphasis added); Douglas M. Bria, et al., *Counseling California Corporations* § 2.83, at 207 (3d ed. 2010) (discussing application of the rule to limit liability of **directors**, not officers); Friedman, §§ 6:245-246, at 6-46 - 46.17 (2011).

Practically speaking, there are good reasons why the BJR does not apply to corporate officers.  Unlike directors, officers do not need the BJR to induce service.  Directors need liability protections to induce risk taking because their relatively small stockholdings and lack of incentive compensation give them little of the "upside" gains on investment projects.  In contrast, officers receive higher absolute levels of pay than do directors, and a significant portion of that pay is likely based upon performance.  Unlike directors, officers stand to reap substantial rewards for serving and taking risks.

"Although a non-director officer may have a duty of care similar to that of a director [ ], his ability to rely on factual information, reports or statements may, depending upon the circumstances of the particular case, be more limited than in the case of a director in view of the greater obligation he may have to be familiar with the affairs of the corporation."  *FDIC v. Perry*, C.D. Cal. Case No. CV 11-5561 ODW (MRWx) at p. 7.

Additionally, apart from the fact that officers receive significantly greater rewards from a corporation than do directors, they also should face greater risks.  Officers work for the company full time, possess extensive knowledge and skill concerning company affairs, and have access to considerably more and better information than directors and exercise great influence over the lives of many people.

### 3.   Recent Federal District Court Opinions Have Confirmed The Holding In *Gaillard*.

Recent District Court decisions have cited to *Gaillard* in denying motions to

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

dismiss from officers attempting to rely on the BJR.  In both *FDIC v. Perry*, C.D. Cal. Case No. CV 11-5561 ODW (MRWx)[4] and *FDIC v. Appleton*, C.D. Cal. Case No. CV 11-00476 JAK (PLAx), officers of the respective banks attempted to rely on the BJR to dismiss complaints brought by the FDIC.  Both District Courts denied the motions from the officer-defendants, holding that the BJR from Section 309 did not apply.  See RJN, Exh. A, p. 5 ("The Court holds, however, that Plaintiff was not required to plead around [the BJR] because [the BJR] does not apply to corporate decisions of officers in California").

**4.   Cases Cited By Defendants Do Not Support Their Argument That The Common Law Permits Officers To Use The BJR As A Defense**

Despite the plain language of Section 309 and the holdings of *Gaillard*, *Perry* and *Appleton*, Defendants boldly argue that the common law protection of the BJR provides immunity under California law for officer-defendants.  MTD, 12:8-9.  The cases cited by Defendants are neither appropriate nor persuasive.  Defendants argue that a "common law" exception to Section 309 exists that provides immunity for claims of damages against officers.  That is simply untrue; there is no common law BJR that applies to limit the liability of corporate officers.  None of the cases cited by Defendants, *Barnes v. State Farm Mut. Auto Ins. Co.*, 16 Cal.App.4th 365 (1993), *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal.App.4th 1020 (2009), *Lee v. Interinsurance Exchange of the Automobile Club of Southern California*, 50 Cal.App.4th 694, 714 (1996), allow for such a reading of Section 309.

At common law, there were two different components of the common law: "one which immunizes directors from personal liability if they act in accordance with its requirements, and another which insulates from court intervention those management decisions which are made by directors in good faith in what the directors believe is the

---

[4]   At footnote 26 Defendants cite to *Perry,* apparently to support their position because defendants there attempted to appeal the ruling, but the Ninth Circuit recently rejected that request.  RJN, Exh. C.

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

organizations best interests."  *Lee, supra*, 50 Cal. App. 4th at 714.

The first component acts as a "defensive prong" which "shields a director from personal liability for participating in a decision that a reviewing court might conclude was imprudent.  That is to say, the business judgment rule is used defensively."  Joseph F. Troy and William D. Gould, *Advising and Defending Corporate Directors and Officers* § 3.16, at 87-88 (2007) ("Troy").  This the common law BJR that was codified by Section 309.

The second component, which has been described as a business judgment "doctrine", operates offensively to prevent courts from directing the officers of a corporation's board of directors.  *Troy* at 88.  The "doctrine" is a principle of "judicial restraint in the face of, and giving deference to, the decision of a board of directors, **in a context in which personal director liability is not involved."**  *Id*.; emphasis added.  An example of such a decision, is a board decision "on behalf of a corporation that pursuit of [a derivative] suit is not in the best interests of the corporation and that it should be abandoned."  *Id*.  That "prong" would not be implicated by this lawsuit, but in any event did not cover officers either.

Simply put, there was no common law BJR applicable to officers.  To be certain, California state law has consistently limited the BJR to directors; and certainly no decision before Section 309 held that the BJR included officers, even those also serving as directors.  California state law has consistently judged officers by a simple negligence standard.  *Gaillard*, *supra*, 208 Cal.App.3d at 1265 (rejecting application of BJR to officers, even though they were also directors).

The cases cited by Defendants are not helpful to their position.  Though Defendants repeatedly cite *Berg & Berg* to support their argument that officers are protected by the BJR, the case did not address officer liability – all of the defendants were *directors*.  *Berg & Berg*, 178 Cal.App.4th at 1045-1046.  Defendants also rely on *Burt v. The Irvine Company,* 237 Cal.App.2d 828 (1965) for the proposition that the BJR exempts "officers of corporations from liability for mere mistakes and errors of

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

judgment." MTD 10:14-16. That is false. Nowhere does the court say that.

Far from being authority for applying the BJR to officers, the *Burt* decision offers a dissertation on the duties of directors:

> **Directors** owe a duty of highest good faith to the corporation and its stockholders. *Burt,* 237 Cal.App.2d at 850.

> When courts say that they will not interfere in matters of business judgment, it is presupposed that judgment—**reasonable diligence**—has **in fact** been exercised. A **director** cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment. *Id.* at 852-853.

> Both respondents contend that the facts merely present a case of disagreement between appellants and **respondent directors** over the business policies of the Company, and that the 'business judgment rule' precludes any action at this time. *Id.* at 853.

The Court of Appeal in *Burt* reversed the dismissal of the complaint, other than as to claims barred by the statute of limitations. *Burt,* 237 Cal. App. 2d at 867. Importantly, *Burt* is expressly discussed in *Gaillard,* a case that squarely addressed the question of whether California's BJR extended to inside director-officers of a corporation. *Gaillard,* 208 Cal. App. 3d at 1265-1266.

Another case cited by Defendants, *Lehman v. Superior Court (Zamora)*, 145 Cal.App.4[th] 109 (2006), dealt solely with what statute of limitations to apply to a claim. *Lehman*, however, stands for the very limited proposition that the BJR was created by common law and not Corporations Code 309. Of course, Plaintiff has not argued that Section 309 created the BJR. Rather, Section 309 underlined codified the BJR defense. *Gaillard,* 208 Cal.App.3d at 1264-1265. The District Court decisions in *Perry* and *Appleton* also squarely addressed these same arguments, soundly rejecting the notion that California common law provided a BJR defense to officers. *See*, RJN, Exh. A, fn. 2 ("Defendant

1   cites cases that do not support his contention that common law BJR applies to corporate

2   officers.")

3       **5.    The Common Law BJR Defense in California Never
            Applied to Officers, Thus Section 309 Could Not Have
4           Repealed The Common Law By Implication**

5       Defendants erroneously argue that if this Court denies application of the BJR,

6   thereby giving effect to Section 309 according to its terms and the explicit holdings in

7   *Gaillard*, *Perry* and *Appleton*, "it would be repealing the common law business

8   judgment rule by implication – which is highly disfavored in California."  MTD, 12:17-

9   18.  Defendants' argument fails as a matter of law because: 1) the plain language of

10  Section 309 expressly precludes the application of the BJR to officers, and 2) as

11  discussed above, no California case (under common law or otherwise) has actually

12  applied the BJR to officers, even those serving as board members, and there was thus no

13  statute or common law to repeal.

14      In *California Assn. of Health Facilities v. Department of Health Services*, 16

15  Cal.4th 284, 297 (1997) the California Supreme Court stated:

16          As a general rule, "[u]nless expressly provided, statutes should
            not be interpreted to alter the common law, and should be
17          construed to avoid conflict with common law rules. `A statute
            will be construed in light of common law decisions, unless its
18          language "'clearly and unequivocally discloses an intention to
            depart from, alter, or abrogate the common law rule concerning
19          the particular subject matter.... Accordingly, "[t]here is a
            presumption that a statute does not, by implication, repeal the
20          common law. [Citation.] Repeal by implication is recognized
            only where there is no rational basis for harmonizing two
21          potentially conflicting laws."  (citations omitted)

24      The fatal flaw in Defendants' "repeal by implication" argument is their fallacious

25  premise that California's common law provided the BJR protections for officers.

26  Despite Defendants' protestations to the contrary, there is no legal support that the pre-

27  Corporation Code common law of California afforded officers the protection of the BJR.

28

1  Absent a clear common law application of the BJR to officers, there cannot be a conflict

2  and thus, no "repeal by implication."

3       Moreover, the plain language of Section 309 is absolutely clear that it applies to

4  directors only.  It is a well settled canon of statutory construction that statutes are to be

5  enforced according to their plain meaning, without resort to legislative history or other

6  intrinsic evidence.  *Golden West Refining Co. v. SunTrust Bank,* 538 F.3d 1233, 1238

7  (9th Cir. 2008) (quoting *Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal.4th 358,

8  369 (2007) ("If the language of a statute is clear and unambiguous there is no need for

9  construction, nor is it necessary to resort to indicia of the intent of the Legislature.")).

10 When statutory language is clear and unambiguous, as here, there is no need for

11 construction, and courts should not indulge in it.  *DaFonte v. Up-Right, Inc*., 2 Cal.4th

12 593, 601 (1992).  The court cannot "insert what has been omitted, or omit what has been

13 inserted."  *Doe v. City of Los Angeles*, 42 Cal.4th 531, 545 (2007) (internal quotation

14 omitted).  Section 309 clearly and unequivocally codifies California's common law for

15 the BJR defense, as indicated in *Gaillard*.  In fact, it is hard to imagine how the

16 California Legislature could have expressed this codification of the common law any

17 more clearly.

18      Meaning must be afforded to legislative acts.  "The courts assume that in enacting

19 a statute the Legislature was aware of existing, related laws and intended to maintain a

20 consistent body of statutes."  *Sacramento Newspaper Guild v. Sacramento County Bd.*

21 *of Supervisors*, 263 Cal.App.2d 41, 54-55 (1968).  The legislature must have intended

22 Section 309 to address fully or "codify" the scope of the affirmative defense under

23 California law, as the Comments to Section 309 expressly state.

24      Further, California's Legislature has clearly distinguished the limitations of

25 liability available to directors and those not available to officers.  Corp. Code §

26 204(a)(10)(c); see above, p.14.  Section 309, as amended in 1987, explicitly references

27 Section 204; the Legislature therefore did not overlook, as Defendants suggest, the

28 differences between officers and outside directors.

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1    In other words, California state courts have correctly held that Section 309

2  "codified" California's BJR as an affirmative defense.  The scope, terms, and

3  requirements of the BJR have indeed been codified in Section 309, which plainly limits

4  the defense only to directors.  *Gaillard*, 208 Cal. App. 3d at 1265-66.

5    Despite failing to provide any persuasive legal authority that the common law

6  BJR protected officers, Defendants baldly argue that a common law BJR for officers

7  survived the enactment of Section 309.  Defendants rely on *Hays v. Wood*, 25 Cal.3d

8  772, 779 (1979).  Their reliance is misplaced as *Hays* is inapposite.  In *Hays*, Chapter 7

9  of the Political Reform Act of 1974 (Government Code section 87207, subdivision (b)

10  (2)) was passed that required any public official who was an attorney to disclose the

11  identity of all clients to whom that official provided over $1,000 in legal services.

12  Wood, who was an attorney, objected to disclosing the identity of his clients, and argued

13  that the public disclosure statute would require him to violate a different statute

14  protecting the attorney-client privilege.  *Id.* at 784.  The Court held that the disclosure

15  statute did not operate to repeal the attorney-client statute because it found no "inherent

16  inconsistency among the several statutory commands which would preclude their

17  concurrent operation."  *Id.* at 785.

18    First, unlike in the instant case, in *Hays* there was a existing different statute that

19  protected the attorney-client privilege.  Next, the Court found that the statute did not

20  purport to "codify" the attorney-client privilege, which was already codified in Evidence

21  Code section 952.  Section 309, by contrast, clearly codified existing law.  In addition,

22  the court in *Hays* did not find an irreconcilable conflict in the two statutes.  Here, there

23  is no conflict because there is no persuasive legal authority that California's common

24  law BJR protected officers.  Therefore, *Hays* provides no support for Defendants'

25  argument.

26    Nor has the California Legislature deemed it appropriate to amend section 309 in

27  the 23 year since the *Gaillard* court squarely held that the BJR applies only to outside

28  directors, not officers.  This Court should therefore reject Defendants' request to

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1  "repeal" *Gaillard* to extend California's law beyond what California's Legislature and

2  courts have determined to be the appropriate scope of the BJR defense.

3   **C.   The BJR Is An Affirmative Defense That Raises Questions Of
        Fact**

4

5      As discussed above, California's BJR does not apply to officers.  However, even

6  were the BJR to apply here, any determination of the applicability of the rule is "a

7  factual argument and not properly raised at the pleading stage."  *Eldridge v. Tymshare,*

8  *Inc.*, 186 Cal.App.3d 767, 777 (1986).

9      This makes sense because director and officer liability under California law is

10 premised upon principles of **ordinary** negligence.[5]  There is no general "immunity" for

11 civil liability against claims of negligence.  This basic principal was explained in *FDIC*

12 *v. McSweeney*, 976 F.2d 532 (9th Cir. 1992) where the court denied the defendants'

13 motion to dismiss.  The Ninth Circuit, affirming the District Court's ruling, recognized

14 that 12 U.S.C. 1821(k) did **not** require proof of gross negligence of directors and

15 officers.  In so doing, the court observed:

16      Under California statutory and common law, shareholders and
       corporations have an established right to sue corporate directors
17     and officers **for negligent breach of the duty of care**. *See* Cal
       Corp. Code § 309 (West 1990)); *Smith v. Superior Court*, 217
18     Cal. App. 3d 950 . . . (Cal. Ct. App. 1990) (negligence liability
       predicated on Cal Corp. Code § 309); *Burt v. Irvine Co.*, 237
19     Cal. App. 2d 828 . . . (Cal. Ct. App. 1965 (common law liability
       for negligence).
20

21 *McSweeney*, 976 F. 2d at 538 (emphasis added).

22  _____

23 [5] Under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.

24 L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"), the state standard of liability applies
   to officers and directors unless the state standard is more lenient than "gross
25 negligence."  If the state standard is more permissive (e.g., imposing liability only for
   fraud), then FIRREA imposes a "gross negligence" standard of liability.  12 U.S.C. §
26 1821(k); *Atherton v. FDIC*, 519 U.S. 213, 227 (1997) ("In our view, the statute's 'gross
   negligence' standard provides only a floor– a guarantee that officers and directors must
27 meet at least a gross negligence standard.  It does not stand in the way of a stricter
28 standard [e.g., liability for negligence] that the laws of some States provide.").

1    Accordingly, "a ruling on the applicability of the business judgment rule is

2    peculiarly a question of fact, wholly inappropriate for consideration on a motion to

3    dismiss." *RTC v. Heiserman*, 839 F. Supp. 1457, 1464-1465 (D. Co. 1993) ("the

4    business judgment rule is a fact bound affirmative defense which provides no basis for

5    dismissal under Rule 12(b)(6)."); *see also, Talib v. Skyway Commc'ns Holding Corp.*,

6    2005 U.S. Dist. LEXIS 33589 at *18 (M.D. Fla. July 7, 2005) ("It is . . . premature for

7    the business judgment rule to be applied at this stage of the case, as discovery has not

8    commenced."); *RTC v. Bernard*, 1995 U.S. Dist. LEXIS 12819 at *41 (M.D.N.C. Aug.

9    8, 1995) ("the business judgment rule is a factually based affirmative defense that is

10   inappropriate for consideration on a motion to dismiss"); *FSLIC v. Musacchio*, 695 F.

11   Supp. 1053, 1064 (N.D. Cal. 1988); *see also FDIC v. Stahl*, 840 F. Supp. 124, 128-29

12   (S.D. Fla. 1993) (business judgment rule depends upon facts and is inappropriate for

13   motion to dismiss); *Gilbert v. Bagley*, 492 F. Supp. 714, 738 (M.D.N.C. 1980) (same,

14   superseded by statute on other grounds); *In re Reading Broadcasting, Inc.*, 390 B.R.

15   532, 556 (Bankr. E.D. Pa. 2008) ("There is no basis, considering only the allegations

16   raised by the complaint, upon which I can now determine that the business judgment

17   rule should or should not apply.").

18       With respect to whether loan approval is immunized from judicial review under

19   the BJR, the Seventh Circuit rejected that notion, after a full trial on the merits:

20   "Despite the defendant directors' arguments that they were shielded by the business

21   judgment rule and that the district court did no more than substitute its judgment for

22   theirs, the court clearly, and correctly, determined that, at the time the loans were made,

23   a reasonably prudent director would not have approved such transactions." *FDIC v.*

24   *Bierman*, 2 F.3d 1424, 1434 (7th Cir. 1993).  Just as findings of fact in *Bierman* lead the

25   district court to determine that those defendants had not proven the prerequisites of the

26   BJR, the need for such factual findings generally should preclude addressing the defense

27   on a motion to dismiss the complaint.

28

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

As the Court of Appeal in *Gaillard* stated:

> The application of Section 309 to the judicial review of a director's actions **raises various issues of fact**, e.g., whether a director acted as an ordinarily prudent person under similar circumstances, and in the best interests of a corporation; and whether he or she made a reasonable inquiry as indicated by the circumstances.   **Such questions generally should be left to a trier of fact.**

208 Cal. App. 3d at 1267-68 (emphasis added); *see also Geltzer v. Altman (In re 1st Rochdale Coop. Group, Ltd.)*, 2008 U.S. Dist. LEXIS 4966 at *3-6 (S.D.N.Y. Jan. 17, 2008) (allegation of failing to act with due care sufficient to overcome motion to dismiss based upon New York's rule, under *Bell Atlantic v. Twombly*, 550 U.S. 570, plaintiff "alleged enough facts . . . to render plausible its argument that the Movants are not entitled to the protection of the business judgment rule with respect to their decisions that resulted in millions of dollars of alleged losses."); *Antioch Co. Litig. Trust v. Morgan (In re The Antioch Company)*, 2011 Bankr. LEXIS 1577 at *182-87 (Bankr. S.D. Ohio April 28, 2011) (Bankruptcy court recommended denial of motion to dismiss based upon Ohio's business judgment rule because even under *Iqbal* and *Twombly*, plaintiff alleged "sufficient factual allegations to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true.").

To summarize, in California, director and officer liability is premised upon ordinary negligence. The BJR (applicable only to non-officer directors) is an affirmative defense that a director must appropriately plead and prove.  That affirmative defense involves factual issues as to whether a director is entitled to assert it.  As a result, it is improper to subject a complaint to a motion to dismiss under FRCP 12(b)(6) grounded on the supposed affirmative defense of the BJR.

And even if, as Defendants incorrectly argue, Plaintiff is required to plead affirmative facts to satisfy the BJR, Plaintiff has certainly done so here.  In paragraph 43 of the Complaint, for example, Plaintiff alleges that "[e]ach of the Defendants was negligent by abdicating his responsibilities to the Bank, unreasonably failing to investigate material facts, failing to use his business judgment in carrying out his

responsibilities to the Bank, and ignoring the danger his negligence was causing to the Bank … .". see *Berg & Berg*, 178 Cal.App.4[th] at 1044, citing *Everest Investors 8 v. McNeil Partners*, 114 Cal.App.4[th] 411, 430 (2003) (the BJR "does not shield actions taken without reasonable inquiry…").

## IV.   CONCLUSION

Defendants suggest that "[a]t the end of the day, the Complaint posits that Defendants should have recognized the magnitude of the looming real estate housing and financial crisis, and should have stopped real estate lending a full one to three years prior to the greatest real estate and financial meltdown in the USA since at least the Great Depression." MTD, p. 1, fn. 1. At the end of the day, Plaintiff will prove that Defendants disregarded their duties in several important ways. At the end of the day, Plaintiff will prove Defendants liable for substandard lending decisions, and negligent practices, not poor economic predictions. But it is not the end of the day. It is early, and the issue at this stage in the litigation is not whether Plaintiff will prove that Defendants were negligent in approving the subject loans, but instead whether Plaintiff has stated adequate factual allegations to maintain a claim against Defendants. It undoubtedly has.

Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss and determine that, among other things, California's Business Judgment Rule does not apply to bar this lawsuit against the officers of County Bank. For this reason and for the other reasons stated herein, the motion should be denied and Defendants ordered to appear within 10 days of the hearing of this matter.

DATED:  May 29, 2012                    NOSSAMAN LLP
                                        Patrick J. Richard
                                        Kevin J. Collins
                                        James H. Vorhis


                                        By: _____/s/ Patrick J. Richard_____
                                             Patrick J. Richard
                                        Attorneys for Plaintiff
                                        FEDERAL DEPOSIT INSURANCE
                                        CORPORATION, AS RECEIVER FOR
                                        COUNTY BANK

FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS