# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS T. HAWKER, et al.,<br><br>    Defendants. | Case No. 1:12-cv-00127-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(ECF NO. 35) |

On January 9, 2013, Plaintiff Federal Deposit Insurance Corporation, as receiver for County Bank ("Plaintiff") filed a motion for default judgment. (ECF No. 35.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF No. 38.)

A hearing on Plaintiff's motion took place on February 13, 2013. For the reasons set forth below, the Court will partially grant Plaintiff's motion for default judgment.[1]

**I.**

**DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a party may apply to the Court for a default judgment after default is entered. The Court's decision whether to enter a default

---

[1] Plaintiff's original motion requested an award of prejudgment interest. As discussed herein, Plaintiff waived any right to prejudgment interest on March 22, 2013. Accordingly, Plaintiff's motion is granted as revised.

1

judgment is discretionary. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). Factors that the Court may consider in exercising that discretion include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Id. at 1471-72. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted).

Here, default was entered as a result of a stipulation/settlement between Plaintiff and Defendants. Defendants consented to entry of default judgment and the Court finds that default judgment is appropriate. Based upon the proposed findings submitted by Plaintiff, the Court makes the following findings of fact and conclusions of law with respect to Plaintiff's measure of damages.

## II.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action is before the Court pursuant to Federal Rules of Civil Procedure 52(a) and 55, and after an evidentiary hearing to determine the amount of a default judgment to be entered against defendants Thomas T. Hawker, John J. Incandela, Dave Kraechan, Edwin Jay Lee, and Edward Rocha, and the issues having been duly heard, it is hereby **ORDERED AND ADJUDGED** that the following findings of facts and conclusions of law on damages are made:

### Procedural History

1. On January 27, 2012, The Federal Deposit Insurance Corporation, as receiver for County Bank ("FDIC-R") filed its Complaint against Defendants Thomas T. Hawker, John J. Incandela, Dave Kraechan, Edwin Jay Lee, and Edward J. Rocha (collectively "Defendants"), former officers of County Bank ("County" or the "Bank"), asserting causes of action for negligence and breach of fiduciary duty in connection with high-risk Commercial Real Estate ("CRE") and/or Construction and Loan Development ("CLD") and Acquisition, Development and

Construction ("ADC") loans. In the Complaint, the FDIC-R sought to recover losses caused by Defendants in making 17 CRE/CLD/ADC loans. Complaint, ¶¶ 31-40; Docket no. 1.

2. On November 1 5,2012, this Court issued an Order To Enter Default Based On Parties' Stipulation, which 1) withdrew Defendants' answer to the Complaint, 2) entered a default judgment against Defendants on the issue of liability , and 3) ordered the FDIC-R to set a hearing to determine the amount of the default judgment. Order To Enter Default Based On Parties' Stipulation; Docket no. 37.

3. On February 13, 2013, an evidentiary hearing on Plaintiff's motion for default judgment was held by this Court. Minutes for Proceedings held before Stanley A. Boone; Docket no. 51.

**Findings of Fact**

4. County, a state-chartered nonmember bank, failed on February 6, 2009, and the FDIC-R was appointed receiver. Complain, ¶ 7; Docket no. 1.

5. Upon County's failure, the FDIC-R entered into a Purchase and Assumption Agreement ("P&A Agreement") with Westamerica Bank relating to various assets of County. Exhibit 139. The P&A Agreement provides, among other things, that the FDIC-R and Westamerica would share in the monetary recoveries for the future sale of any loans that Westamerica assumed from County. Specifically, the P&A Agreement stated, "[i]f the amount of gross recoveries...is positive...the Assuming Bank shall pay to the Receiver an amount equal to eighty percent (80%) of the Recovery Amount... .". Exhibit 139.

6. The FDIC-R alleged that Thomas T. Hawker was the Bank's Chief Executive Officer from 1991 until the Bank failed and President from 1991 until December 2005. He was also a director and member of the Directors Loan Committee ("DLC") for the Bank from 1991 until he resigned as a director on August 19, 2008. Complaint, ¶ 19; Docket no. 1.

7. The FDIC-R alleged that John J. Incandela was the Bank's Executive Vice President and Chief Credit Officer from June 20, 2005 until the Bank failed. He was also a member of the DLC for the Bank. Complaint, ¶ 20; Docket no. 1.

8. The FDIC-R alleged that Dave Kraechan was a Senior Vice President and Chief

3

1  Lending Officer of the Bank from January 1, 2001 until the Bank failed.  He was also a member
2  of the DLC for the Bank.  Complaint, ¶ 21; Docket no. 1.

3        9.      The FDIC-R alleged that Edwin Jay Lee was a Senior Vice President and Bank
4  Credit Administrator from April 6, 1998 until the Bank failed.  He was also a member of the DLC
5  for the Bank.  Complaint, ¶ 22; Docket no. 1.

6        10.     The FDIC-R alleged that Edward J. Rocha was hired as Chief Operating Officer
7  ("COO") on May 1, 1995.  He became the Bank's President in December 2005 and remained as
8  President and COO until the Bank failed.  He was also a member of the DLC for the Bank.
9  Complaint, ¶ 23; Docket no. 1.

10      11.     In its Complaint, the FDIC-R alleged that County was damaged as a result of
11 Defendants' negligence and breaches of fiduciary duties in approving 17 loans.  Complaint, ¶¶ 31-
12 40; Docket no. 1.

13      12.     At the motion for default judgment hearing, the FDIC-R sought recovery for 10 of
14 the 17 loans described in the Complaint, which are as follows:

| **Borrower** | **Loan Amount** |
|---|---|
| Merced Paseo LLC | $9.58M |
| El Dorado Corners LLC/Tres Piedras LLC | $11.176M |
| Monte Carlo LLC | $15.45M |
| Carson Creek | $10.65M |
| Jackson View LLC | $9.69M |
| Jackson View LLC | $6.23M |
| Rocklin Partners LLC | $9.9M |
| Shen LLC | $10.92M |
| Steve Enad | $1.872M |
| Steve and Teresa Enad | $840K |

Exhibit 140.

4

13.   At the motion for default judgment hearing, the FDIC-R presented evidence, including numerous exhibits and the live testimony of Michael Duncan of the FDIC, and Scott Carnahan, CPA, regarding the damages suffered by the FDIC-R as a result of each of these loans. These damages include losses to the FDIC-R as a result of having to share in recoveries with Westamerica under the P&A Agreement (except the Carson Creek loan). Carnahan Testimony; Exhibits 139 and 140.

14.   I find the testimony of Duncan and Camahan to be credible in establishing the damages suffered by the FDIC-R.  I also find that Carnahan, a CPA, was qualified as an expert witness to render opinions on damages for the 10 loans referred to above.

15.   I find that the FDIC-R has proved by a preponderance of the evidence the amount of the damages for each loan as described in more detail below.

**A.     Merced Paseo, LLC**

The Merced Paseo loan (loan number 7705249807) originated on January 9, 2007 in the amount of $9.58 million.  Exhibit 1.  The closing principal balance on the loan at the time of foreclosure was $6,848,951.  Exhibits 4, 10, 104; Duncan and Carnahan Testimony.  The Merced Paseo property was ultimately sold for a net total of $1,560,852.39.  Exhibit 11.  Taking the P&A Agreement into account, the FDIC-R has proved damages in the amount of $5,600,269.  Exhibit 140; Carnahan Testimony.

**B.     El Dorado Corners, LLC and Tres Piedras, LLC**

The El Dorado loan (loan number 7705469523) originated on April 10, 2007 in the amount of $11.176 million.  Exhibit 12.  The closing principal balance on the loan at the time of foreclosure was $10,469,905.  Exhibit 12; Duncan and Carnahan Testimony.  The El Dorado property was ultimately sold for a net total of $1,602,332.42.  Exhibit 21.  Taking the P&A Agreement into account, the FDIC-R has proved damages in the amount of $9,188,039.  Exhibit 140; Carnahan Testimony.

**C.     Monte Carlo, LLC**

The Monte Carlo loan (loan number 7705174215) originated on October 25, 2006 in the amount of $15.45 million.  Exhibit 22. The closing principal balance on the loan at the time of

foreclosure was $8,918,141. Exhibits 29; Duncan and Carnahan Testimony. The Monte Carlo property was ultimately sold for a net total of $1,040,000. Exhibit 32. Taking the P&A Agreement into account, the FDIC-R has proved damages in the amount of $8,086,141. Exhibit 140; Carnahan Testimony.

### D. Carson Creek

The Carson Creek loan (loan number 7704859823) originated on April 24, 2006 in the amount of $10.65 million. Exhibit 33. The closing principal balance on the loan at the time of foreclosure was $9,396,797. Exhibit 42A-F; Duncan and Carnahan Testimony. The Carson Creek property was ultimately sold for a net total of $4,150,357. Exhibit 44. This loan was not subject to the P&A Agreement. The FDIC-R has proved damages in the amount of $5,246,441. Exhibit 140; Carnahan Testimony.

### E. Jackson View, LLC

There were two separate Jackson View loans. Loan number 7705564023 originated on December 6, 2005 in the amount of $9.69 million, and the other loan, which was broken into over 20 separate loan numbers, was originated on May 31, 2007 in the amount of $6.23 million. Exhibits 45, 46. The closing principal balance on the first loan at the time of foreclosure was $5,939,044, and the closing balance on the second loan at the time of foreclosure was $5,428,908. Exhibits 56A-Q; Duncan and Carnahan Testimony. The Jackson View properties were ultimately sold in two transactions. The first loan, which involved vacant lots, was sold for a net total of $1,082,663.19. Exhibit 57. The second loan, which involved constructed homes, was sold for a net total of $2,022,067.96. *Id.* Taking the P&A Agreement into account, the FDIC-R has proved damages in the amount of $4,972,914 and $3,811,253 for these two loans. Exhibit 140; Carnahan Testimony.

### F. Rocklin Partners, LLC

The Rocklin Partners loan (loan number 7703120217) was originated on May 15, 2006 in the amount of $1.7 million. Exhibit 95. It was an increase on a prior loan. *Id.* The closing principal balance on the entire loan at the time of foreclosure was $8,866,416. Exhibit 101; Duncan and Carnahan Testimony. The Rocklin property was ultimately sold for a net total of

1  $2,868,474.  Exhibit 103.  The FDIC-R only sought damages for the increased value of the loan.
2  The FDIC-R has proved damages on that extension in the amount of $1,700,000.  Exhibit 140 ;
3  Carnahan Testimony.

### G. Shen LLC and related loans

There were three separate Shen-related loans originated on February 8,2006:  Loan number 7704437152 to Shen LLC for $10,920,000 ("Shen Loan"); Loan number 7704285952 to Steve Enad for $1,872,000 ("Enad Loan"); and Loan Number 7704288352 to Steve and Teresita Enad for $840,000 ("S&T Loan").  Exhibits 104, 105, 108.  The respective closing principal balances on the loans at the time of foreclosure were $9,794,088 for the Shen Loan, $1,872,000 for the Enad Loan, and $840,000 for the S&T Loan.  Exhibit 134A-C; Duncan and Carnahan Testimony.

The properties for the Enad and S&T Loans were ultimately sold for net totals of $438,421.87 and $139,183, respectively.  Exhibit 136.  The Shen LLC property remains with Westamerica.  It was appraised at $2,230,000 in January 2013.  Exhibit 138.  There was also a recovery against the guarantor of $400,000.  Exhibit 137.  Taking the P&A Agreement into account, the FDIC-R has proved damages in the respective amounts of $7,690,088 for the Shen Loan, $1,521,263 for the Enad Loan, and $728,653 for the S&T Loan.  Exhibit No. 140; Carnahan Testimony.

### H. Summary

In total, the FDIC-R has proved damages to County in the amount of $48,545,060 in net principal loss.

### I. Waiver of Prejudgment Interest

Plaintiff initially requested prejudgment interest in its motion for default judgment.  On March 14, 2013, the Court ordered the parties to submit briefing on the issue of the interplay between state and federal law with respect to the availability of prejudgment interest.  However, on March 22, 2013, Plaintiff filed a Notice of Intent to Waive Prejudgment Interest and requested that the Court enter default judgment without calculating prejudgment interest.  Having waived any right to prejudgment interest, the Court will enter default judgment only for the principal

losses established by Plaintiff.

### J.     Costs, Attorneys' Fees and Enforcement of Judgment

Pursuant to the parties' joint proposed final judgment, the parties agree that they shall each be responsible for their own costs, attorneys' fees and expenses.  Moreover, Plaintiff agreed not to take any action of any kind to document, record, register as a lien, report to any credit agency, or collect the final judgment against any of the Defendants.

## Conclusions of Law

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.

2.     State law applies to the causes of action in the FDIC-R's Complaint for negligence and breach of fiduciary duty because County Bank was located in California.  Atherton v. FDIC, 519 U.S. 213, 214 (1997).

3.     Upon default, the factual allegations of the complaint, except those relating to the amount of damages, are as a matter of law deemed to be true.  TeleVídeo Systems, Inc. v. Heídenthal, 826 F.2d 915, 917 (9th Cir. 1987).

4.     The FDIC-R is entitled to the recovery of all losses for which Defendants' conduct was at least a substantial factor in causing.  CACI No. 430.

5.     The FDIC-R's measure of damages is the outstanding balance due each of the loans.  FDIC v. United Pacific Insurance Co., 20 F.3d 1070, 1080 (10th Cir. 1994); see also FDIC v. Appling, 992 F.2d 1109, 1112 (10th Cir. 1993).  This is calculated by taking the unpaid principal balance for each loan at the time of default, and subtracting any monetary recoveries from guarantors and/or the sale of the property.

## III.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that default judgment is appropriate in favor of Plaintiff and against Defendants in the principal amount of $48,545,060.00 on Plaintiff's claims for negligence and breach of fiduciary duty.

It is hereby ORDERED, ADJUDGED and DECREED as follows:

1. Judgment is entered in favor of Federal Deposit Insurance Corporation, as receiver of County Bank, and against Thomas T. Hawker, John J. Incandela, Dave Kraechan, Edwin Jay Lee and Edward J. Rocha, jointly and severally, on the net principal loss to the Bank in the collective amount of $48,545,060.

2. The FDIC-R waived any right to prejudgment interest.

3. Except as otherwise provided by the Settlement Agreement, the FDIC-R shall not to take any action of any kind to document, record, register as a lien, report to any credit agency, or collect this Final Judgment against any of the Defendants.

4. The Parties shall each be responsible for his, her, or its own costs, attorneys' fees, and expenses.

5. Without in any way affecting this Final Judgment, the Court retains exclusive jurisdiction to consider all further matters arising out of or connected with the Settlement Agreement and this Final Judgment.

6. Pursuant to Federal Rule of Civil Procedures 54(b), the Court finds that there is no just reason for delay, and directs the Clerk of the Court to enter this Final Judgment forthwith on the docket.

IT IS SO ORDERED.

Dated: **April 1, 2013**

UNITED STATES MAGISTRATE JUDGE